## Horr, et al. v. Goodfriend's Exor., et al.

(Decided December 6, 1911.)

### Appeal from Bell Circuit Court.

Real Estate—Action to Recover Undivided Half of—Evidence—Duty of Court.—In an action to recover an undivided half of certain

real estate, the evidence examined and held sufficient to authorize
a recovery. It is the duty of courts to see that substantial justice
is done between litigants, and an error that is not necessarily fatal
to the validity of the judgment should not be allowed to interfere
with this duty.

D. B. LOGAN and CHAS. I. DAWSON for appellants.

T. C. ANDERSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellees, executor of
the will of J. Goodfriend, deceased and certain devisees
thereunder, to recover an undivided half of a parcel of
real estate known as lots 14, 15 and 16 situated in the
city of Middlesboro, it being alleged in the petition that
the real estate in question had been owned by J. Good-
friend, deceased, by whose will it was devised appellees
and that the appellants, B. Horr and Katie Horr, were
illegally in the possession of, and without right, claiming
the same.

The answer of appellant's denied appellees' title, and
alleged title in themselves as the parents and heirs at
law of Jennie Goodfriend, the widow of J. Goodfriend,
who, it was further alleged, died intestate and childless,
and was, at the time of her death, owner of the property
sued for.

Appellees by reply denied that Jennie Goodfriend
was the owner of the property at her death. The trial
resulted in a verdict awarding appellees the property
and $200 damages for its detention, upon which judg-
ment was entered declaring their ownership thereof and
restoring to them its possession.

Appellants were refused a new trial, and have ap-
pealed.

The only issue made by the pleadings was whether
the undivided half of the real estate in controversy was
owned by J. Goodfriend at the time of his death, or by
his wife, Jennie Goodfriend, who survived him several
months. It is admitted by the pleadings that if it was
owned by J. Goodfriend, it went at his death, under his
will, to his wife, Jennie, for life, and at her death to ap-
pellees, the testator's brothers. On the other hand, if it
was the property of the wife instead of the testator, and
she died intestate and childless, it descended under the
statute to appellants, her father and mother.

145—23

There can be no doubt from the record before us that this issue was correctly decided by the jury in favor of the appellees. Jacob Goodfriend, deceased, was an honest, frugal German, who came to this country about six years before his death. He was engaged for several years, and at the time of his death, in mercantile pursuits in partnership with E. Harrison, and in addition, dealt considerably in real estate on his own account and in behalf of his wife.

On August 22nd, 1905, he and his partner, Harrison, purchased of the Turner Coal Company lots 14, 15 and 16, and the deed conveying to them the property was made to J. Goodfriend and E. Harrison. The evidence shows, without contradiction, that the trade for the property was negotiated by J. Goodfriend, that no cash was paid on the purchase, but that he and Harrison executed four notes for the purchase price which were signed J. Goodfriend and E. Harrison, one half of which the former paid. The evidence also shows, beyond doubt, that it was Goodfriend's invariable custom to sign his name J. Goodfriend, and the custom of others to so write it. This was shown by numerous deeds for real estate in Middlesboro which had been sold by him, and from others conveying real estate to him. Several deeds were also introduced by which real estate was conveyed to his wife in which her name appeared as Jennie Goodfriend, wife of J. Goodfriend, and according to the evidence it was also his invariable custom in writing the name of his wife, to write it Jennie Goodfriend. It further appears from the evidence that J. Goodfriend adopted and followed the unusual custom of depositing in bank all moneys received by him to the credit of his wife, Jennie Goodfriend, and that all checks drawn by him on this account were signed Jennie Goodfriend, by J. Goodfriend. In addition his will, which liberally provided for his wife, Jennie, devised his undivided half interest in the three lots in question to her for life, with remainder to the appellees, his brothers. The will attempted no disposition whatever of the real estate, the title to which stood in the name of his wife.

The foregoing facts fully manifested, we think, his exclusive ownership of the property. The only evidence introduced by appellants in contradiction of the proof of his ownership referred to, was to the effect that on one occasion in giving to his partner, Harrison, a check for one-half the cost of certain repairs made upon the

property, it was signed Jennie Goodfriend, by J. Goodfriend; that on another occasion when the adjuster of an insurance company paid him a partial loss sustained by a fire that occurred in a building on the lots, he caused him to make the check payable to Jennie Goodfriend; and that on a third occasion when asked by one Eustis what he would take for his undivided half interest in the property, he told him that he had given it, or intended to give it to his wife, Jennie, and, therefore, would not sell it. In view of the overwhelming character of the evidence showing J. Goodfriend's ownership of the property, we do not regard the circumstances referred to as contradictory of such ownership, the facts manifested by the signing of the check for repairs Jennie Goodfriend, by J. Goodfriend, and of requiring the adjuster to make the check for the loss on the property payable to Jennie Goodfriend, are explained consistent with J. Goodfriend's ownership of the property, by his custom of depositing all moneys received by him in her name; and his statement to Eustis evidently arose from the purpose that he then had in his mind, and had doubtless already carried into effect, of devising his interest in the property to his wife for life.

It is complained by appellants that the instructions given by the court, in effect, directed the jury to find for appellees. We do not entirely approve the instructions in the form given, but as it is so manifest that there was nothing in the evidence militating against the appellees' right to recover, and that any other verdict than that returned would have been flagrantly against the evidence, we are not inclined to hold that the instructions were prejudicial to the substantial rights of appellants. After all, it is the duty of courts to see that substantial justice is done between litigants, and errors that are not necessarily fatal to the validity of the judgment should not be allowed to interfere with this duty.

Judgment affirmed.